# Wood-Dryer Grocery Co. v. Alabama National Bank.

1. *Debtor and creditor; liability of one creditor to another.*—Where a debtor, who was squandering and misapplying the income from his business, upon one of his largest creditors threatening to enforce the collection of his debt unless the business was put in the charge of some competent, honest and reliable man, who would devote the proceeds therefrom to the payment of his debts, turns over to one of his clerks the financial management of the business, authorizing him to transact all matters pertaining to the finances thereof, and the person so intrusted takes charge, collects all moneys paid, makes all expenditures and deposits, and utilizes the net income from the business in the liquidation of said debtor's indebtedness, the creditor who made the threat and at whose instance such arrangement was consummated is not liable to another creditor of the same debtor for goods sold and delivered to him both before and after the arrangement, and to which creditor some of the money realized from the business pending said arrangement was paid; the rights and remedies of no creditor being impaired, and the moving creditor in no wise incurring any liability to the other creditors.

2. *Same; fraudulent misrepresentation; must be known to creditor*

*sought to be bound.*—Where one credit·r seeks to recover from an-other creditor of their common debtor as for money had and re-ceived, upon the ground that the debtor bought goods from the plaintiff creditor by fraudulently misrepresenting that the defendant was his partner, and that the goods were sold in reliance upon such repre-sentation, before there can be a recovery, it must be shown that the defendant received the benefit of the proceeds of such goods· with notice of the fraud; and in the absence of such proof ·the plaintiff is not entitled to recover.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action of assumpsit brought by the appel-lant against the appellee; and counted upon the common counts. The plaintiff had sold goods to one T. D. Clark, who was doing business under the name of T. D. Clark & Co., and a suit was brought to recover an indebtedness for such goods. The facts of the case, as disclosed on the present appeal, are sufficiently stated in the opinion.

Upon the hearing of all the evidence, the court, at the request of the defendent instructed the jury, "If they believe the evidence, they must find for the defendant."

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the giving of this charge and the several rulings upon the evidence

E. J. SMYER, J. M. GILLESPY and W. R. HOUGHTON, for appellant.—1. The general charge should never be given when there is a conflict in the evidence.—*Carter v. Shorter*, 57 Ala. 253; *Paden v. Bellenger*, 87 Ala. 575; *Belisle v. Clark*, 49 Ala. 98; or if different inferences may reasonably be drawn from the evidence.—*Payne v. Mathis*, 92 Ala 585; or if a demurrer to the evidence should not be sustained.—*Cen. R. R. & Bank. Co. v. Roquemore*, 96 Ala. 236; *Daniel v. Hardwick*, 88 Ala. 557; *Bromley v. B. M. R. R. Co.*, 95 Ala. 397; *Holman v. Whiting*, 19 Ala. 703; *Martin v. State*, 62 Ala. 240; *Cox v. Knight*, 49 Ala. 173. The general charge should never be given when an oral contract is to be construed, when there is any doubt as to the intention of the parties, even though there may be no conflict in the evidence.—*Swanner v. Swanner*, 50 Ala. 66; *Benziger v. Miller*, 50 Ala. 206. And the inter-pretation placed upon the contract by subsequent action of the parties may be looked to by the jury.—*Comer v. Bankhead*, 70 Ala. 139; *Sines v. Superintendent*, 55 Mich.

[Wood-Dryer Grocery Co. v. Alabama National Bank.]

383; *Tallon v. Mining Co.*, 55 Mich. 147; *Boykin v. Bank*, 72 Ala. 262.

2. Where a creditor takes charge of the business of a debtor and exercises the dominion and control of the business, he is liable for the debts contracted in the conduct of the business, although the business may be run in the name of the debtor.—*Purvis v. Butler*, 49 N. W. Rep. 564; *Righter v. Farrel*, 134 Pa. St. 482; *Fell v. Farrel*, 134 Pa. St. 485; 17 Amer. & Eng. Encyc. of Law, 831, note.

A contract between a debtor and his creditors, whereby the debtor transfers his business to the creditors, and agrees to continue to carry it on for their benefit on a salary, under the direction of a committee of creditors, makes the creditors partners, though it contains a statement that it shall not involve them in any partnership liability.—*Purvis v. Butler*, 49 N. W. Rep. 564; 17 Amer. & Eng. Encyc. of Law, 831, note.

3. The merchandise was purchased from plaintiff under the influence of false and fraudulent representations. This gave the plaintiff the right to rescind.—*Loeb v.Flash*, 65 Ala. 526.

JAMES E. WEBB and JOHN P. TILLMAN, *contra.*—The general affirmative charge was properly given for the defendant.—*Mary Lee C. & R. Co. v. Chambliss*, 97 Ala. 180; *Bromley v. Birmingham Min. R. R. Co.*, 95 Ala. 397; *Cobb v. Malone*, 92 Ala. 630.

2. The arrangement which was effected by Clark intrusting the financial management of his business to Hooper, which was done at the instance of the president of the defendant bank, in no way made the bank liable for any of Clark's indebtedness. .

3. The plaintiff could not recover as for money had and received, on the ground of fraudulent misrepresentation on the part of Clark, which was connived at by the defendant. There was not shown to be a knowledge of fraud on the part of the defendant, nor was the plaintiff's determination to rescind the sale seasonably expressed. This was necessary to authorize a recovery on such ground, as was held in the following cases : *Loeb v.Flash*, 65 Ala. 526; *Wollner v. Lehman, Durr & Co.*, 85 Ala. 275; *Johnston v. Bent*, 93 Ala. 160; *Moog v. Hannon*, 93 Ala. 503; *Kyle v. Ward*, 81 Ala. 120.

HEAD, J.—This is an action by the appellant against the appellee, on the common counts, for goods sold and delivered, and for money had and received. We have read the evidence carefully and are unable to discover in it the slightest material conflict, or that the same, or any part of it, construed in its strongest possible light for the plaintiff, affords the slightest inference of a legal liability upon the defendant. The facts are that T. D. Clark, under the name of T. D. Clark & Co., for several years, carried on two commissary stores in proximity to the furnaces of Sloss Iron & Steel Co., near Birmingham, Alabama, selling goods mainly to the employés of that company, under paying arrangements with that company. He did his banking business with The Alabama National Bank—the defendant; kept his deposit account there and obtained advances of money from it, from time to time. On October 1st, 1891, he owed the bank about $9,000, or probably more. He had a considerable line of credit, and owed sundry mercantile debts. From about July, 1891, W. E. Hooper was in the employ of Clark, as clerk and bookkeeper, in this business. Joseph F. Johnston was president of the bank. Clark owed him, individually, a debt of $5,500 or over, for borrowed money. In the fall of 1891, it became known to Johnston that Clark was indulging bad habits, such as drinking and gambling and misapplying his money; and about October 1st, he had an interview with Clark in the presence of said Hooper, which he details as follows: "I called him in the bank and insisted upon payment of the debt due the bank. He said he could not pay it at once, and I told him, Mr. Hooper being present, that I was not willing that the bank should take any risk about that matter; that my information was that he was taking the money that he had received in the course of the business and drinking it up and gambling it off, and unless the matter was put in the charge of some one that I had confidence in, who would devote it to the payment of the debts—the creditors of T. D. Clark & Co.—that I should have to take steps to enforce a collection of the debt due the bank. We talked the matter over, and he finally said that he was perfectly willing for Mr. Hooper to handle all the money and use it in paying the debts, and that he would not touch a dollar of it, except a small amount for his absolute expenses, I think about $50 per

month—voluntarily; and then and there he wrote a note to the paying teller or cashier, stating that from that time forward, no checks would be paid unless they were signed by Hooper. His business was that of selling goods to employés of the Sloss Iron & Steel Co., and that was done through checks of the company issued to the commissary. That account was settled on the 20th of each month; he paid them a commission on their checks, and they gave him a check for that amount. Under this arrangement, that check was to always be delivered to Mr. Hooper and deposited in the bank and used in paying the debts of T. D. Clark & Co." Hooper, who was introduced as a witness by the plaintiff, and upon whose testimony the plaintiff mainly relies, has the following to say as to what the arrangement between Clark and Johnston was: "When I took charge of the cash and checks and signing of the notes, Clark and myself did have a conversation with Capt. Johnston, in his office, in regard to the matter. The agreement there as to my duties, they agreed that I should take charge of the cash, sign the checks, and sign the notes, take general charge of the store. The agreement was by and between T. D. Clark and the Alabama National Bank who was represented by Capt. Johnston. The agreement was made there between Capt. Johnston and Clarke that I should do these things.  *  *  *  *  *  I think it was in October that I assumed charge as cashier. The arrangement between Capt. Johnston, Clarke and myself took place in Capt. Johnston's office, in the president's office of the Alabama National Bank. T. D. Clarke & Co. were indebted to Alabama National Bank at that time. I think the indebtedness was about $12,500. Clarke & Co. were indebted to other persons at that time. I think the whole indebtedness was between $20,000 and $21,000. The total assets of T. D. Clarke & Co. at that time would amount to about the same as his liabililies.  *  *  *  Under that arrangement, of which I speak, my duties were, I was to draw the checks and take charge of the cash. With the cash I paid the indebtedness. I deposited and drew checks against it.  *  *  *  *  *  At the time the agreement or arrangement was made in reference to the security of the bank's debt, I can't recollect the whole conversation. Capt. Johnston censured Clarke very much for the way he was acting and

told him he would have to put somebody in charge of the store, or would have to sell him out, or put him out, or do something, and then the agreement was made, and he put me in charge of the business. His indebtedness to the bank was the whole cause of it. * * * * During the time I was at the store of T. D. Clarke & Co., both before and after the conversation had with Capt. Johnston, I was in the employment of T. D. Clarke & Co., and not in the employment of either the defendant or Capt. Johnston. During all that time I received my instructions from T. D. Clarke, and during that time I never received any instructions from the defendant or Capt. Johnston in reference to what my duties were, or in reference to what I should do out there. I took my pay out of the money that came into my hands for my services. I did not receive any pay from the defendant or Capt. Johnston. Neither the defendant nor Capt. Johnston during all of said time had or claimed to have any authority over the business of T. D. Clarke & Co., or ever in any way interfered with said business or its management. Neither the defendant nor Capt. Johnston had or claimed to have the possession of said store or business and had nothing whatever to do with the business or the property in the store of T. D. Clarke & Co. That he, witness, deposited the money collected from the business of T. D. Clarke & Co., in the Alabama National Bank to the credit of T. D. Clarke & Co., and checked the same out in the name of T. D. Clarke & Co., in the same manner any other depositor would have done, and neither the bank nor Capt. Johnston controlled or attempted to control his actions. That he never received any instructions in reference thereto, either from the defendant or from Capt. Johnston." In another place, the witness says : "T. D. Clarke was limited as to the amount of money that he could use out of the money that came into the firm. He was limited to $50 a month. $50 a month was all that I would pay Clarke out of the money that came into the firm of T. D. Clarke & Co., after October, November and December. He never asked me for more money. * * * He asked me to lend him some money once, and I refused. I limited Clarke to $50 a month, under his own and Capt. Johnston's instructions." In another place the witness was asked, by plaintiff : "Under whose instruc-

tions did you start to drawing checks?'' He answered:
''My recollection is, that Clarke came to the store and
told me that in future he had made some agreement with
Capt. Johnston about my drawing the checks. I don't
recollect getting instructions from Capt. Johnston in re-
gard to it.'' This statement was immediately followed
by the first extract, hereinabove set out from
Hooper's testimony. The testimony shows, with-
out dispute, that the arrangement assented to
by Clarke was carried out; that Clarke continued
to give attention to the business, though loosely
and negligently; that he continued to purchase the goods
for the stores, though, occasionally, Hooper gave orders
for goods that were needed. Hooper attended to sales
and the finances in the name of T. D. Clarke & Co.,
executed notes to creditors, collected and deposited the
moneys, drew checks on the bank account, and paid
debts. During the four months he was in charge, he
received and paid out, on debts and expenses, about
$20,000, paying from $4,000 to $5,000 on the bank's
debt. There was paid to the plaintiff in December, or
afterwards, on its debt $2,374, and Clarke afterwards
bought other goods from it. About February 8th, 1892,
Clake absconded, and the bank sued out attachment
against him and levied upon everything that was left,
including choses in action; and realized therefrom about
enough to pay the balance due upon its debt. Johnston
lost the whole of his individual debt. The testimony of
Dryer and McCary as to the interviews with Johnston, shed
no possible light upon any issue here involved. If the in-
terviews with Dryer could be tortured into a guaranty by
Johnston, of the payment by Clarke, of plaintiff's ac-
count for the goods sold to Clarke, the action it not framed
to meet it. There is no pretense that Johnston or the
bank had any interest in, or connection with, the busi-
ness, whatever, except as creditors, under the circum-
stances above detailed; and the precautionary steps
taken by Johnston, looking to a requirement from
Clarke of a safer management, were, without dispute,
in the interest of all the creditors alike; and the result
was the payment of $20,000 to creditors which, very
probably, would have been largely wasted through the
profligacy of Clarke, had precautions not been taken.
The arrangement is spoken of as an agreement. Formu-

lated in its strongest light, with that view, and shaded by all the act of the parties in furtherance of it, it was not an agreement, in the sense of being a binding, enforceable contract. It was wholly indefinite and unlimited as to time; there was no change of ownership; the only consideration of Clarke's promise was the indefinite, unlimited, and therefore, unenforceable, promise of Johnston to suspend proceedings for the collection of the bank's debt. The arrangement was determinable in a day, at election of either party. The bank could have sued Clarke, and Clarke could have discharged Hooper immediately, without the commission, by either, of an actionable breach of an agreement. The rights and remedies of no creditor or customer, were impaired, nor could be impaired, by it. So far as Hooper's functions, under it, may have been executed without molestation, it may be that he could have been held as a trustee for the creditors of the funds coming into his hands, which it was his duty to pay out to creditors; but this is not a proceeding for relief of that kind. Hooper is not before the court, and could not be, in this forum and form of proceeding.

It is upon the foregoing case that plaintiff now contends that the bank is its debtor for the goods it sold and delivered to Clarke. The city court correctly determined, upon the effect of the evidence, that no such relation existed.

The plaintiff also contends for recovery upon the count for money had and received. The proposition, as we understand it, is, that Clarke purchased plaintiff's goods upon fraudulent misrepresentations of fact, entitling plaintiff to rescind; and that the bank knowingly received the proceeds of the goods, with notice of the fraud. Dryer, who managed plaintiff's business, testified that Clarke told him, about the first of November, 1891, before he would sell him any more goods, that Capt. Johnson was his partner, and his testimony tended to show that he sold the goods thereafter in reliance upon that statement. This is all. Not a word of proof that the bank ever had the benefit of a dollar of the proceeds of plaintiff's goods, or that Johnston, or any member of the bank, ever had any notice, whatever, of the fraud. Although Dryer had several interviews with Johnston in reference to

Clarke's responsibility, he never intimated anything in reference to Johnston being a partner of Clarke, except that he testified, that after Clarke absconded, and the bank's attachment was levied, Johnston told him he was not a partner of Clarke. He does not intimate that he, even then, informed Johnston that Clarke had so represented to him, as a basis of credit, or otherwise. The plaintiff had no cause of recovery, on this aspect of the case.

There is no merit in any of the exceptions touching the admisson of evidence.

Affirmed.

HARALSON, J., not sitting.